UNITED STATES of America

v.

Robert S. STOLLER, Defendant.

Crim. A. No. 94–10103.

United States District Court,
D. Massachusetts.

Oct. 27, 1995.

Richard M. Egbert, MaryEllen Kelleher, Law Office of Richard Egbert, Boston, MA, for Robert S. Stoller.

Mark D. Seltzer, Department of Justice, New England Bank Fraud Task Force, Boston, MA, Anita S. Lichtblau, Michael Dee, New England Bank Fraud Task Force, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The defendant, Robert S. Stoller ("Stoller"), brought a motion to dismiss the indictment against him, asserting that his prosecution in this case violates the Double Jeopardy Clause of the Fifth Amendment because he has previously been punished for the same conduct as is alleged in the indictment. While the defendant's argument is by no means frivolous, the Court denied his motion. This memorandum explains why.

### I. BACKGROUND

From 1975 until March 15, 1990, when he was asked to resign by its board of directors, Stoller was the president, chief executive officer, and principal lending officer of the Coolidge Corner Co-operative Bank (the "Bank").

In July, 1990, the FDIC began proceedings to prohibit Stoller from further participation in the conduct of the affairs of the Bank or any other federally insured depository institution in accordance with section 8(e)(7) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e)(7) (1989). During three days of hearings before an Administrative Law Judge, the FDIC presented evidence tending to show that Stoller had on several occasions caused the Bank to enter into transactions in violation of Regulation O, 12 C.F.R. Part 215, in that the Bank extended him credit in amounts in excess of limits imposed on interested party transactions. At the conclusion of the hearing the Administrative Law Judge issued a Decision recommending that Stoller be barred from participating in any manner in the affairs of any FDIC insured institution without the FDIC's prior consent pursuant to section 1818(e). The Board of Directors of the FDIC adopted the Decision and issued an Order of Prohibition (the "Debarment Order") on February 18, 1992.[1] The Debarment Order prohibited

---

1. The FDIC subsequently issued a Decision and Order on Motion for Reconsideration and Clarifi-

Stoller from participating in any manner in the affairs of any FDIC insured institution, from soliciting, procuring, or voting any voting rights in any FDIC insured institution or voting for a director of any FDIC insured institution. *See In re Stoller,* Decision and Order on Motion for Reconsideration and Clarification (FDIC February 18, 1992).

In January, 1995, a grand jury indicted Stoller on charges that he misapplied bank funds in violation of 18 U.S.C. § 656 (Counts 1 through 9), was involved in bank bribery in violation of 18 U.S.C. § 215 (Counts 10 through 40), and made false entries in the Bank's books and records in violation of 18 U.S.C. § 1005 (Counts 41 through 48). Stoller moved this Court to dismiss all of the counts against him, arguing that the Order of Prohibition constitutes punishment for the same offense for which he is charged here and consequently that this prosecution violates the Double Jeopardy Clause.

## II. *ANALYSIS*

 The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." It protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264–65, 65 L.Ed.2d 228 (1980); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969); *United States v. Ramirez–Burgos,* 44 F.3d 17, 18 (1st Cir.1995). For this prosecution to fall into one of these three areas of proscription

the Debarment Order must constitute "punishment" in the constitutional sense.[2]

The Double Jeopardy Clause affords a defense to Stoller only if the sanction contained in the Debarment Order constitutes punishment. The Supreme Court in *United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989) held that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand that term." Therefore, unless Stoller's debarment was "solely" remedial, it is punishment and he may invoke the protection of the Double Jeopardy Clause. *See United States v. Hudson,* 14 F.3d 536, 540 (10th Cir.1994) (citing *Austin v. United States,* —— U.S. ——, —— n. 12, 113 S.Ct. 2801, 2810 n. 12, 125 L.Ed.2d 488 [1993] ). It is important to note, however, that a sanction constitutes punishment only if it *must* be explained—at least in part—as serving deterrent or retributive purposes, not merely because it *may* be so explained. *Id.* at 540. Thus, so long as the sanction contained in the Debarment Order can be seen as serving solely remedial purposes it will not constitute punishment merely because it is also facially consistent with punitive goals. *Bae v. Shalala,* 44 F.3d 489, 493 (7th Cir.1995).

Stoller makes several arguments that the sanction imposed by the FDIC constitutes punishment. To place these arguments in context, it is necessary to review the background of the 1989 amendment to 12 U.S.C. § 1818.

Certain of the legislative history of the Financial Institution Reform, Recovery and Enforcement Act ("FIRREA"), which

---

cation on September 22, 1992, in which it clarified its earlier decision and order by stating that Stoller could not represent FDIC insured institutions as an attorney. References herein to the "Debarment Order" refer to this later order which incorporates the February 18, 1992 order by reference.

**2.** For the purposes of this memorandum, the Court assumes without deciding that Counts 1 through 9 in the indictment constitute the "same offense" as that for which Stoller had already received the debarment under the test enunciat-

ed in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The counts relating to taking kickbacks and making of false entries in the Bank's books and records depend upon factual allegations never raised nor alleged in the FDIC proceeding and would, therefore, not even implicate *Blockburger. See Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (applying the "same elements test" only where the *same act or transaction* constitutes a violation of more than one statute).

amended section 1818 in 1989, tends to support the notion that amendment of section 1818(e) was intended to serve the legitimate remedial purpose of protecting insured institutions from the dangers of misconduct by bank insiders, *viz.:* "serious misconduct by insiders and affiliated borrowers has caused or contributed to the insolvencies of at least one-third (and probably more) of all failed commercial banks and over three quarters of all failed S & Ls, with tremendous costs to the FSLIC and FDIC." H.R.Rep. No. 101–54(I), *reprinted in* 1989 U.S.C.C.A.N. 86, 260. Congress evidently believed that enactment of Title IX, which expanded regulatory enforcement authority to include the power to remove officers of regulated institutions, was "essential to respond to a serious epidemic of financial institution insider abuse and criminal misconduct and to prevent its recurrence in the future." *Id.* Even Stoller concedes, "a major thrust of 12 U.S.C. § 1818(e) is to insure that the banking system be protected from depredations of dishonest officials and further shore up public confidence in the banking industry in general." Defendant's Memo in Supp. of Motion at 6–7. It does not follow, therefore, that section 1818(e) "can only be explained" by reference to punitive purposes, although portions of Title IX are certainly intended to "punish culpable individuals" (i.e., enhanced prison sentences for persons convicted of banking related offenses). H.R.Rep. No. 101–54(I), *reprinted in* 1989 U.S.C.C.A.N. 86, 260, 262.

An examination of section 1818(e) in the abstract, however, is not conclusive of whether its goals are solely punitive or solely remedial or a mixture of both. Rather, it is the sanction that Stoller actually received thereunder that is dispositive. As the Court in *Halper* said, "The determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901; *see also Hudson,* 14 F.3d at 542 (stating "the fact that a statute may be remedial does not necessarily mean that sanctions

imposed thereunder are solely remedial"). Consequently, the Court must now examine the specifics of the sanction actually imposed on Stoller.

Stoller argues that the sanction he received is punitive due to the impact it has upon his ability to work in his chosen field. Occupational restrictions, he argues, should only be used to the extent reasonably necessary to protect the interests of the public. He also argues that his sanction must be punitive because the Debarment Order contains no indication that the FDIC considered the future threat that he posed to insured institutions.

■ The argument that the Debarment Order is punitive due to the impact it has upon Stoller's ability to earn a living is without merit. While it is true that such occupational restrictions should only be used as reasonably necessary to protect the interests of the public, here there is substantial evidence to support the conclusion of the Administrative Law Judge that Stoller's debarment was necessary. "While [Stoller] 'may interpret debarment as punitive, and indeed feel as though [he has] been punished, debarment constitutes the 'rough remedial justice' permissible as a prophylactic governmental action.'" *Id.* (quoting *United States v. Bizzell,* 921 F.2d 263, 267 [10th Cir.1990]). Indeed, the Debarment Order's apparent severity is ameliorated by the fact that Stoller may at any time seek the FDIC's consent to his participation in the affairs of an insured institution. *See* 12 U.S.C. § 1818(e)(7)(B) (West 1989).[3] In fact, the FDIC has explicitly demonstrated that it contemplates Stoller taking advantage of this provision and has noted that this mechanism strikes a balance between allowing him to work for financial institutions while recognizing the needs of the regulatory agencies to protect the interests that they regulate. *See In re Stoller,* Decision and Order on Motion for Reconsideration and Clarification, p. 11 (FDIC September 22, 1992).

Stoller also argues that the examination of the Administrative Law Judge into Stoller's

**3.** Because he may petition the FDIC at any time to allow him to participate in the affairs of an FDIC insured institution in accordance with 12

U.S.C. § 1818(e)(7)(B), Stoller's assertion that the Debarment Order is "draconian" and functionally a "bar for life" is hyperbolic.

42

past conduct was insufficient in that it failed to consider what future threat Stoller may pose to the federal deposit insurance system. This, he says, indicates that the true purpose of the sanction was punitive. Given the findings of fact of the Administrative Law Judge concerning the nature and severity of Stoller's conduct, he was under no affirmative obligation to engage in "crystal ball gazing" in an attempt to discern the explicit future threat posed by Stoller to FDIC insured-institutions. Stoller's past conduct when serving as a bank insider is the best possible evidence of the level of threat such future affiliation might pose. *Cf. United States v. Furlett*, 974 F.2d 839, 844 (7th Cir.1992) (finding that a ban of defendant from all futures trading activity was a remedial measure commensurate with the nature of defendant's past wrongdoing). This is far from the "rare case" in which the sanction is so "overwhelmingly disproportionate" that *Halper* would classify it as "punishment." *See Halper*, 490 U.S. at 449, 109 S.Ct. at 1902.

### III. *CONCLUSION*

For the foregoing reasons, this Court concludes that the Debarment Order issued by the FDIC against the Defendant Robert S. Stoller was not "punishment" and that, consequently, his prosecution in this matter is not prohibited by the Double Jeopardy Clause. The motion to dismiss is, therefore, DENIED.